**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Sierra Club | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  1:19-cv-02315-JEB |
| v. | ) | |
| | ) | |
| United States Fish and Wildlife Service, | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF TIFFANY MCCLURKIN**

I, Tiffany McClurkin, hereby declare and state:

1. I presently serve as Atlanta Regional Freedom of Information Act ("FOIA") Coordinator for the Southeast Region, Interior Regions 2 and 4, for the United States Fish and Wildlife Service ("FWS" or "Service"), a bureau of the United States Department of the Interior ("DOI"), 1 Wildlife Drive, Sanibel, Florida 33957.  I have held my current position since November 6, 2016 through the present.  My geographic area of responsibility is the Southeast Region, which covers Alabama, Florida, Georgia, North Carolina, Puerto Rico, South Carolina, Tennessee, United States Virgin Islands, Arkansas, Iowa, Missouri, Mississippi, and Louisiana.

2. In my capacity as the Atlanta Regional FOIA Coordinator, my duties include, but are not limited to:

   a. receiving FOIA requests, reviewing for sufficiency, determining which program possesses the records requested, and referring requests to appropriate programs or offices for action;

b.  reviewing documents compiled by FWS program personnel and reviewing information proposed for withholding under one or more of the FOIA exemptions;

c.  utilizing the web based electronic FOIA tracking system for logging request history and status information and determining whether documents should be released;

d.  obtaining Office of the Solicitor, Department of the Interior, concurrence when information is withheld;

e.  assembling and indexing materials, as needed;

f.  preparing acknowledgement letters, extensions of time letters and requests for clarification;

g.  coordinating FOIA responses, when necessary, among the Southeast Regional Office, Southeast Field Offices, other Regional Offices, and Headquarters;

h.  reviewing and analyzing records, writing FOIA response letters and overseeing assembly of all data and material for requests;

i.  providing pertinent FOIA guidance and information needed to finalize responses for signature when information is withheld or when no responsive records are available;

j.  ensuring accuracy of FOIA exemptions cited for all exempt material prior to Office of the Solicitor legal sufficiency review; and

k.  assisting the Office of the Solicitor, Department of the Interior, on FOIA requests, FOIA appeals, and FOIA litigation.

3.    The statements contained in this declaration are based on my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

4.    Due to the nature of my official duties, I am familiar with the procedures followed by the Service in responding to requests made pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a.

6.    In accordance with _Vaughn v Rosen_, 484 F.2d 280 (D.D.Cir. 1973), this declaration is being submitted in support of defendant's motion for summary judgment.  This declaration provides the Court and Plaintiff with an explanation of the Service's recordkeeping system, the procedures used to search for, review, and process the responsive records, and of the Service's justification for withholding records in full or in part pursuant to FOIA Exemptions (b)(5) and (b)(6).

7. I am making the following statements based upon my review of information and records made available to me in my official capacity, and my personal knowledge.

**PLAINTIFF'S FOIA REQUEST**
**FWS-2018-00551**

7.  By letter dated February 27, 2018, the Southeast Regional Office of the FWS, received a letter from Sierra Club ("Request"), Sierra Club Environmental Law Program, attached hereto to Exhibit A, requesting the following:

Pursuant to FOIA and DOI's implementing regulations for it, the Sierra Club requests:

- All records generated since November 2016 discussing the ongoing species status review for the Florida Key deer (_Odocoileus virginianus clavium_), including but not limited to:

- o Records pertaining to the impetus for the review, including but not limited to records of the reasons for, motivation behind, prompting of the review.  Such records should include but are not limited to any communications within FWS and with outside agencies, parties or individuals;

- o Records of scientific information presented to or generated by FWS;

- o Records of scientific review from peer reviewers, State and Federal agency staff, and Department of Interior staff;

- o Records of communications discussing the status of the species;

- o Records of communications discussing regulatory mechanisms to address threats to the species; and

- o Records of communications discussing conservation measures for the species.

8. Plaintiff also requested a fee waiver.  Plaintiff provided justification within their Request for a waiver of fees. *(See Exhibit A.)*

9. By electronic mail message dated March 21, 2018, attached hereto as Exhibit B, the FWS acknowledged receipt of Plaintiff's FOIA request and assigned it tracking number FWS-2018-00551.  Plaintiff was advised that its request for a fee waiver was granted and its request was in the category of the "exceptional/voluminous" processing track which would take over 60 workdays to process.  Additionally, Plaintiff was advised that narrowing the scope of its request would result in "quicker processing". *(See Exhibit B.)*

10. I routed this Request to the Regional Ecological Services (ES) Program for processing on March 21, 2018.  I tasked this office for processing because Plaintiff's request sought

records regarding the Florida Key deer, a federally listed species under the ESA, and the ES Program administers the Endangered Species Act.

11.  The Regional ES Program routed the request to the South Florida ES Field Office because that office administers the Florida Key deer and responsive records were likely to be located in this location.

12.  I also sent the Request via electronic mail to the Headquarters (HQ) FWS FOIA Officer, Carrie Hyde-Michaels, on June 22, 2018 for responsive records within the possession of the HQ ES Program.  The HQ FWS FOIA Officer tasked Eileen Harke on June 22, 2018 to review the Request and determine if the HQ ES Program would need to conduct a search since the FL Key deer was not located within the HQ geographic area.

13.  On or about July 15, 2018, five (5) records from the South Florida ES Field Office were provided to me by the Regional ES FOIA Coordinator, Larry Lee, for review. I determined that all records were responsive to the Request.  Prior to my review, the five (5) records were reviewed by Larry Lee and the South Florida ES Field Office to determine whether the documents were privileged and/or releasable.  These documents were later re-reviewed and provided in full and/or in part.

14.  On September 13, 2018, FWS issued a response to the Florida Key deer Request and produced two (2) of the five (5) documents responsive to the request.  The response stated that the "information withheld pursuant to Exemption 5 includes privileged information involving discussions on matters of policy between subordinates and superiors and were used to guide the Agency in the decision-making process". *Id.  (See Exhibit C)*

15. Six (6) partial responses and a final response was provided to Plaintiff after August 1, 2019. FWS later provided four (4) additional releases in response to two (2) letters from Plaintiff dated January 8, 2020 and April 21, 2020.

## THE SEARCH FOR RESPONSIVE RECORDS

16. The FOIA Request was received by the Atlanta Regional FOIA Office on February 27, 2018.

17. In the Southeast Region, Regions 2 and 4 of FWS, FOIA requests are processed on a first in, first out basis within their assigned processing track in accordance with FWS Administrative Procedure Part 203, FW 1, Section 1.4, (B)(3). There are five different processing tracks: expedite, simple, normal, complex, and exceptional/voluminous. The Request was placed in the exceptional/voluminous processing track. Requests placed in the exceptional/voluminous processing track involve very complex processing challenges, which may include a large number of potentially responsive records and will take over sixty workdays to process. Because this Request involved very complex processing challenges, such as including a large number of potentially responsive records that would generally take over sixty workdays to process, I determined it should be placed in the exceptional/voluminous processing track. Requests that typically seek a high volume of material or require additional steps to process such as the need to search for records in multiple locations are placed in the exceptional/voluminous processing track.

18. Based on the subject matter and the FWS Field Office from which the Request referred to, I determined that with this request, I would need to contact multiple locations, to include HQ and the Regional ES Program Office, in order to have these offices search for

responsive documents.  In these multiple locations, several employees would need to search their files, both electronic and hard copy, for responsive documents.  Additionally, Plaintiff's Request requested a high volume of material and based on my experience as a FOIA Coordinator, I knew that multiple locations would need to be searched for the search to be adequate.

19.  The Atlanta Regional Office's FOIA Coordinator's standard practice is to evaluate the Request and based on its subject-matter, assign the Request to the appropriate Program Office(s) that may have records responsive to the Request.  The FOIA Coordinator relies on the Deputy Assistant Regional Director(s) and/or the Assistant Regional Director(s) of the Program(s) to assign and task their appropriate Field Office(s) and/or records custodians to search for records.

20. Upon receipt of the FOIA Request, it was assigned tracking number FWS-2018-00551. On March 21, 2018, after Plaintiff's FOIA Request was reviewed, it was routed to the Regional and Headquarters ES Programs for processing based on the subject matter of the request and the location of the records.

21. The Regional ES Program staff are aware that the search requires the records custodians to search any shared drives or servers and hardcopy files for responsive records, which is typically performed by completing a key-word search.  Key words were developed by the Headquarters ES Program and the Regional ES Program Subject Matter Experts.

22. FWS has a decentralized method of storing its records.  Each headquarters office, each regional office, and each field office stores records and each method of storage may be electronic and/or hardcopy.

23. The search was conducted at multiple offices to include the Atlanta Regional ES Program Office, 1875 Century Boulevard, Atlanta, Georgia 30345; the South Florida ES Field Office, 1339 20th Street, Vero Beach, Florida 32960; the Key Deer National Wildlife Refuge, 28950 Watson Boulevard, Big Pine Key, Florida 33043, and the Headquarters ES Office, 5275 Leesburg Pike, Falls Church, Virginia 22041-3803.

24. The Regional ES Program routed the request to the South Florida ES Field Office.

25. The South Florida ES Field Office identified and coordinated with the potential custodians of records to include the Refuge Manager of the Florida Keys National Wildlife Refuges Complex. Daniel Clark, Leopoldo Miranda, Aaron Valenta, Jack Arnold, Nikki Colangelo (formerly Nikki Lamp), Roxanna Hinzman, Ashleigh Blackford, Matthew Dekar, and Brian Powell were the identified potential custodians. I routed the Request to the FWS FOIA Officer, Carrie Hyde-Michaels, for potential responsive records within Headquarters possession.

26. The Regional ES Program searched their electronic and hardcopy files on the topic of Florida Key deer. These majority of the electronic files are kept by using Microsoft Word, Microsoft Excel, and Microsoft Outlook. The Headquarters ES Program and the Regional Refuges Program searched their electronic files on the topic of Florida Key deer. Hardcopy files are kept in a file room within the South Florida ES Field Office.

27. On or about March 27, 2018, the individuals previously identified as potential custodians performed a query of their electronic and/or hardcopy records responsive to the Request. The dates of search were November 2016 through March 2018.

28. The search terms used within the Regional ES Program were "Key deer", "SSA (species status assessment)", "SSA", "Species Status Assessment", "5-year review", "5-yr review",

"5-yr", "status review", "notice", "5 year review", "Florida Key deer", "FL Key deer", and "SSA (Species Status Assessment)". The Subject Matter Expert relayed that during the custodians' search, one term at a time was used to maximize the number of results; however, the custodians of records could potentially have screened with a second term to locate responsive records.

29. Daniel Clark, the Refuge Manager of the Florida Keys National Wildlife Refuges Complex, also retrieved documents from locations that housed records specific to the topic such as the Refuge staff electronic files (documents and correspondence) filed on the topic and all Key Deer records in a digital Key deer archive.

30. The following term was used by the FWS Headquarters ES Program Staff to conduct a search within their email: "key deer". Email searches were conducted by Don Morgan, Chief, Division of International Conservation; Bridget Fahey, Chief, Division of Conservation and Classification; Amy Brisendine, FWS Biologist, and Gary Frazer, Assistant Director - Ecological Services.

31. I later submitted an Enterprise eArchive System (EES) Audit Request (e-Discovery) on February 26, 2020 to obtain records from three (3) Regional ES staff members because at the time of search these staff members were unable to search their files for responsive records.

32. Search terms for the e-Discovery request included: "Key deer" AND "SSA (species status assessment)"; "Key deer" AND "Status review"; "key deer" AND "5-year review"; "key deer" AND "5-yr review"; "key deer" AND "5-yr notice"; "key deer" AND "Florida"; "Key deer" AND "Species Status Assessment"; "key deer" AND "SSA"; "key deer" AND "FL"; and "Key deer" AND "deer survey". The search terms for the e-

Discovery request were developed by the South Florida ES Field Office as the experts in locating the responsive material. This search was sent to and coordinated with the FWS Service Records Manager, Teri Jackson-Hicks for action.

33. The Service's response to the Plaintiff's FOIA Request was coordinated by me. I have reviewed the complete FOIA case file for the Request, as well as the documents produced in response to the Request. I have also conferred with the lead Subject Matter Expert, Ashleigh Blackford, in the South Florida ES Field Office while processing the Request, in order to fully familiarize myself with the background and history of this Request.

34. Based on my review and conferrals, I am familiar with the background and history of the Request, how the Request was processed, the records that were released and withheld, and the reasons underlying FWS's withholdings.

35. FWS has searched all locations likely to contain responsive documents.

### FISH AND WILDLIFE SERVICE'S VAUGHN INDEX

36. As a result of the Request and this litigation, I, along with the ES Program Subject Matter Expert, reviewed every page of all the records that had been deemed responsive by the ES Program but withheld pursuant to a FOIA exemption. We also reviewed all records produced in the FWS' FOIA Response that contained redactions. In reviewing the material, we determined whether there was any non-exempt information in the records that was redacted or withheld in their entirety that could be reasonably segregated and released. Ultimately, we determined that there was no segregable, non-exempt information in addition to the documents produced in the FWS' FOIA Response.

37. A Microsoft Excel file was created by the ES Program to document the justification for withholding and/or redacting any non-segregable exempt material. ***See Exhibit D***

38.  As detailed in the FWS' Vaughn Index, all material that was withheld pursuant to a FOIA exemption contained a description of the withheld information and a justification. In summary, any material that contained clearly identifiable privacy interests was marked as 5 U.S.C. § 552(b)(6). All material that was pre-decisional and deliberative was labeled on the FWS' Vaughn Index as 5 U.S.C. § 552(b)(5), deliberative process privilege. Similarly, all pages containing factual or deliberative material that included attorney-client privilege or commercial information privilege were marked as 5 U.S.C. § 552(b)(5).

39.  As detailed in the FWS' index, the majority of the documents that were withheld in full and withheld in part were related to the Key deer Species Status Assessment and internal deliberations. The records withheld in full and withheld in part memorialized discussions and contained opinions, comments, edits, and advice of service employees and peer reviewers.

40.  Furthermore, the Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents related to a specific species.  It is considered to be in draft form until FWS makes a decision regarding the species.  Once a decision has been made, FWS will release the Species Status Assessment to the public as supporting documentation for the decision.  The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register.  The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency and would stifle internal communications.

41. Lastly, two of the documents withheld in their entirety contained attorney-client privilege information.

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

42. All documents responsive to Plaintiff's Request and subject to the FOIA were processed to achieve maximum disclosure consistent with the access provisions of the FOIA. Every effort was made to provide Plaintiff with all material in the public domain and with all reasonably segregable non-exempt information in the responsive records. No reasonably segregable, non-exempt portions have been withheld from Plaintiff. Further description of the information withheld, beyond what is provided in this declaration, could identify the actual exempt information that the FWS has protected. The FWS carefully reviewed the responsive records on a line-by-line and page-by-page basis in an attempt to identify reasonably segregable, non-exempt information. The FWS has determined that there is no additional, meaningful, nonexempt information that may be reasonably segregated and released without disclosing information that warrants protection under a FOIA exemption. The agency has released all reasonably segregable information.

### Exemption 5 of the FOIA

43. FWS withheld in full the Species Status Assessment pursuant to Exemption 5 of the FOIA.

44. Exemption 5 of the FOIA allows an agency to withhold "inter-agency and intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the Agency." 5 U.S.C. § 552(b)(5). Exemption 5 therefore incorporates the privileges that protect materials from discovery in litigation, including the deliberative process, attorney work-product, attorney-client, and commercial information privileges. In this instance, FWS has cited the deliberative process privilege,

the attorney client privilege and the commercial information privilege to support its withholding of exempt information.

**Exemption 5 – Deliberative Process Privilege**

45. The deliberative process privilege protects the decision-making process of government agencies and encourages the frank exchange of ideas on legal or policy matters by ensuring agencies are not forced to operate in a fishbowl. A number of policy purposes have been attributed to the deliberative process privilege, such as: (1) assuring that subordinates will feel free to provide the decisionmaker with their uninhibited opinions and recommendations; (2) protecting against premature disclosure of proposed policies; and (3) protecting against confusing the issues and misleading the public.

46. Draft Species Status Assessment's that have been shared with outside consultants consists of strategic discussions/comments regarding agency considerations in endangered species matters. These documents, withheld by FWS pursuant to the deliberative process privilege, are pre-decisional since they were drafted before and in preparation for public review.

47. A Species Status Assessment is a scientific assessment that results in greater transparency, defensible decision making, and a clearer and concise document for ESA matters. Outside consultant review, allows FWS to identify important issues, share scientific information and brainstorm potential avenues for tracking species. This is critical to the decision-making process for the FWS.

48. Although a Consultant Corollary is not specified in the FOIA, various federal courts have applied its approach to withholding pre-decisional documents when an outside party is functioning as an agency employee. Scientific factual material that is under review for

possible inclusion in an agency study can be deemed deliberative in the decision-making process of what data to include in the final report.

## Exemption 5 – Attorney Client Privilege

49. The attorney-client privilege protects confidential communications between an attorney and his/her client relating to a legal matter for which the client has sought professional advice and is not limited to the context of litigation.  Moreover, although it fundamentally applies to confidential facts divulged by a client to his/her attorney, this privilege also encompasses any opinions given by an attorney to his/her client based upon, and thus reflecting, those facts, as well as communications between attorneys that reflect confidential client-supplied information.

50. The information that has been withheld under the attorney-client privilege of Exemption 5 constitutes confidential communications between agency attorneys and agency clients, related to legal matters for which the client sought professional legal assistance and services.  Specifically, the attorneys provided legal advice and guidance to FWS ES Program staff.  The FWS ES Program staff sought legal advice and guidance from the attorneys and such legal advice and guidance was provided to FWS as comments to ESA materials.  These comments were exempt from disclosure.

51. Additionally, the FWS employees who communicated with the attorneys regarding this information were clients of the attorneys at the time the information was generated, and the attorneys were acting in their capacities as lawyers at the time they communicated legal advice.

52. Accordingly, I determined that the FWS held this information confidential and I concluded that the FWS did not waive the attorney-client privilege.

### Exemption 5 – Commercial Information Privilege

53. When the government enters the marketplace as an ordinary commercial buyer or seller, the government's information is protected under the commercial information privilege if it is sensitive information not otherwise available, and disclosure would significantly harm the government's monetary functions or commercial interests.

54. The theory behind the privilege is that the government may be placed at a competitive disadvantage or lose the benefit of its bargain if such information were disclosed to the public.

55. I determined that conference telephone numbers and passcodes contained on the exempt records pertains to the FWS's ongoing operations regarding the Florida Key deer.

56. I determined that information withheld under the commercial information privilege reflects information concerning the operations of the government which could be harmed if disclosed.

57. Accordingly, I concluded that disclosure of conference telephone numbers and passcodes could place the government at a competitive disadvantage, and I released the factual information in the responsive document that would not harm the FWS's commercial interests.

### Exemption 6

58. Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

59. *Similar Files.* Similar files under Exemption 6 has a broad, rather than a narrow, meaning and encompasses all information that applies to a particular individual.

60. In this case, the redacted FWS records contained personal telephone numbers of private individuals. These records, included in the broad definition of similar files, were provided to private individuals to voluntarily provide personal contact information. These records were kept electronically and were responsive to Plaintiff's FOIA Request. Accordingly, I determined that FWS records constituted "similar files" within the meaning of Exemption 6.

61. *Privacy Interest.* I also determined that the individuals identified in the FWS records had a substantial privacy interest in their personal information, including their personal telephone numbers.

62. I made this determination for two reasons. First, as a general matter, individuals submitted these forms to the government to consult on endangered species matters, and I reasonably foresaw that these individuals may not wish to have their personal telephone numbers publicly disclosed to non-governmental, third parties.

63. Second, I also reasonably foresaw that disclosing these individuals' personal telephone numbers presented a realistic threat of harassment in their personal lives or personal time.

64. *Private interest outweighed public interest.* I next balanced this privacy interest against the public interest of disclosure, to determine whether the release of these individuals' personal telephone numbers would constitute a clearly unwarranted invasion of personal privacy. *See* 5 U.S.C. § 552(b)(6).

65. I determined that, under this balancing test, the individuals' substantial privacy interest significantly outweighed any public interest in disclosure.

66. I determined that releasing the personal telephone numbers of private individuals would not serve the essential purpose of the FOIA, which is to contribute to the public

understanding of the activities of the government.  I concluded that releasing the personal telephone numbers of these individuals would not serve the "core" purpose of FOIA, i.e., it would not shed *any* light on the operations of the FWS, much less "contribute significantly" to the public's understanding of the FWS operations and activities. Instead, it would simply allow Plaintiff to know the personal phone numbers of private individuals.

67. Given the substantial privacy interest involved, and the fact that there was little to no public interest in the disclosure, I concluded that release of this personal information would constitute a clearly unwarranted invasion of personal privacy under Exemption 6.

## SEGREGABILITY

68.  FWS carefully reviewed the responsive records on a line-by-line and page-by-page basis in an attempt to identify reasonably segregable, non-exempt information. FWS has determined that there is no additional, meaningful, nonexempt information that may be reasonably segregated and released without disclosing information that warrants protection under a FOIA exemption.  FWS has released all reasonably segregable information.

## CONCLUSION

69.  For the foregoing reasons, the Fish and Wildlife Service respectfully requests that this action is dismissed in its entirety as the Fish and Wildlife Service has released all non-exempt material responsive to the FOIA Request in accordance with the requirements of the FOIA.  Accordingly, I respectfully submit this declaration in support of Defendant's Motion for Summary Judgment.

Executed this 23rd day of September, 2020

Tiffany McClurkin
Atlanta Regional FOIA Coordinator
U.S. Fish and Wildlife Service

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| Sierra Club | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  1:19-cv-02315-JEB |
| v. | ) | |
| | ) | |
| United States Fish and Wildlife Service, | ) | |
| | ) | |
| Defendants. | ) | |

# EXHIBIT A

Case 1:19-cv-02315-JEB   Document 19-2   Filed 09/23/20   Page 20 of 50



**FOIA R4, FW4 <foiar4@fws.gov>**

# Request for Records on ESA Status Review for Fl Key Deer

1 message

---

**Karimah Schoenhut** <karimah.schoenhut@sierraclub.org>      Tue, Feb 27, 2018 at 12:11 PM
To: foiar4@fws.gov, fwhq_foia@fws.gov

Dear FOIA Officers,
Please find attached a request for records, and associated fee waiver request, regarding the Fish and Wildlife Service's species status review for the endangered Florida Key deer. I am submitting the attached request on behalf of the Sierra Club.

With thanks,
Karimah Schoenhut

--



**Karimah Schoenhut**
Staff Attorney
Sierra Club Environmental Law Program
50 F Street NW, 8th Floor
Washington DC 20001
Phone: 202-548-4584
karimah.schoenhut@sierraclub.org

CONFIDENTIAL LEGAL COMMUNICATION/WORK PRODUCT
This e-mail may contain privileged and confidential communications or confidential attorney work product.  If you receive this email inadvertently, please reply and notify the sender and delete all versions from your system. Thank You.

---

  **FOIA Request on FL Key Deer KS.pdf**
76K



Carrie Hyde-Michaels
FWS FOIA Officer
U.S. Fish and Wildlife Service
5275 Leesburg Pike
MS:IRTM
Falls Church, VA 22041
**fwhq_foia@fws.gov**

Tiffany McClurkin, Region 4 FOIA Coordinator
U.S. Fish and Wildlife Service
1875 Century Boulevard
Atlanta, GA 30345
foiar4@fws.gov

February 27, 2018

*SUBMITTED ELECTRONICALLY VIA E-MAIL*

**RE: Request for information related to the ongoing species status review for the Florida Key deer** *(Odocoileus virginianus clavium)*

**Fee Waiver Request, "other" fee requester category**

Dear FOIA Officers,

On behalf of the Sierra Club, I hereby submit the following request pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and its implementing regulations, 43 C.F.R. §§ 2.1–2.34, seeking records held by the Fish and Wildlife Service (FWS) that relate to the ongoing species status review for the Florida Key deer *(Odocoileus virginianus clavium)*.[1] Responsive records are likely to be held by the field offices within Region 4, the Region 4 office, and Fish and Wildlife Service headquarters. The main field office involved is the South Florida Ecological Services, Vero Beach Field Office.

The Sierra Club is the nation's oldest grassroots organization. It has more than 800,000 members nationwide and is dedicated to the protection and preservation of the environment.

---

[1] *See* Jenny Staletovich, "Feds Quietly Reconsider Protected Status for Endangered Florida Key Deer," Miami Herald, February 6, 2018, *available at* http://www.miamiherald.com/news/local/community/florida-keys/article198561674.html (noting that FWS confirmed the review is ongoing).

Sierra Club's Florida chapter alone has nearly 38,000 members. One of the Sierra Club's main national initiatives, the Our Wild America campaign, tackles pressing environmental problems including global warming and threats to wildlife. Sierra Club has long advocated for protections for Florida Species under the Endangered Species Act, including litigation to ensure the FWS meets its obligations.

The status of the Florida Key deer was last evaluated by FWS in 2010, and the Service determined that the deer remained endangered.[2] FWS has confirmed that it is currently conducting a species status review for the endangered Florida Key Deer.[3] However, FWS has not provided details to the public about the impetus for this review, nor did it file notice in the Federal Register about the review. Nor has FWS made public any petition seeking a change to the listing status of the species.[4]

Pursuant to FOIA and DOI's implementing regulations for it, the Sierra Club requests:

- All records generated since November 2016 discussing the ongoing species status review for the Florida Key deer (*Odocoileus virginianus clavium*), including but not limited to:
    - Records pertaining to the impetus for the review, including but not limited to records of the reasons for, motivation behind, prompting of the review. Such records should include but are not limited to any communications within FWS and with outside agencies, parties or individuals;
    - Records of scientific information presented to or generated by FWS;
    - Records of scientific review from peer reviewers, State and Federal agency staff, and Department of Interior staff;
    - Records of communications discussing the status of the species;
    - Records of communications discussing regulatory mechanisms to address threats to the species; and
    - Records of communications discussing conservation measures for the species.

As used throughout this letter, the terms "record" and "records" shall mean all writings (handwritten, typed, electronic, or otherwise produced, reproduced or stored) in FWS's possession, regardless of whether the record or document was originally produced by another agency, entity, or individual. This includes, but is not limited to, any correspondence, minutes of meetings, memoranda, notes, e-mails, calendar or daily entries, maps, photos, reports, agendas, notices, and telefaxes. Without limitation, the records requested include records relating to the topics described above at any stage of development, whether proposed, draft, pending, interim, final or otherwise.

---

[2] *Available at* https://ecos.fws.gov/docs/five_year_review/doc3275.pdf
[3] *See* Jenny Staletovich, "Feds Quietly Reconsider Protected Status for Endangered Florida Key Deer," Miami Herald, February 6, 2018, *available at* http://www.miamiherald.com/news/local/community/florida-keys/article198561674.html (noting that FWS confirmed the review is ongoing).
[4] *See* https://ecos.fws.gov/ecp0/profile/speciesProfile?sId=6326

*Excluded Documents*

       This request *excludes*:

1. Records pertaining to logistical issues such as scheduling of meetings and conference calls, project timelines, assignment of lead offices, document processing, etc.

2. Records containing raw species survey data.

3. Records that are already available to the public.


*Records Delivery*

       We request that DOI, in responding to this request, comply with all relevant deadlines and other obligations set forth in FOIA. 5 U.S.C. § 552, (a)(6)(A)(i). <u>Please produce the requested records on a rolling basis as they become available to the FOIA officer</u>; at no point should the search for—or deliberation concerning—certain records delay the production of others that the agency has already retrieved and elected to produce.

       The Sierra Club prefers electronic copies of all responsive documents. Please send electronic responses to <u>karimah.schoenhut@sierraclub.org</u>.

       As detailed below, Sierra Club requests a waiver of fees. However, please provide the records above irrespective of the status and outcome of your evaluation of Requesters' fee category assertion and fee waiver request. In order to prevent delay in FWS's provision of the requested records, Requesters state that they will, if necessary and under protest, pay fees in accordance with Department of Interior's FOIA regulations.  Please consult with us, however, before undertaking any action that would cause the fees to exceed $200. Such payment will not constitute any waiver of Requesters' right to seek administrative or judicial review of any denial of its fee waiver request and/or rejection of its fee category assertion.


 *Withheld Documents*

       Should you decide to invoke a FOIA exemption with regard to any of the requested records, please include in your full or partial denial letter sufficient information for the Sierra Club to appeal the denial. To comply with legal requirements, the agency must include the following information:

1. Basic factual material about each withheld item, including the originator, date, length, general subject matter, and location of each item; and

2. Explanations and justifications for denial, including the identification of the category within the governing statutory provision under which the document (or portion thereof) was withheld and a full explanation of how each exemption fits the withheld material.

If you determine that portions of a record requested are exempt from disclosure, please redact the exempt portions and provide the remainder of the record to the Sierra Club.

**Fee Waiver Request**

I respectfully request that you waive all fees in connection with this request as provided by 5 U.S.C. § 552(a)(4)(A)(iii) and 43 C.F.R. § 2.19. The Sierra Club has spent years promoting the public interest through the development of policies that provide enhanced environmental protection and protection for wildlife, and has routinely received fee waivers under FOIA.  The Sierra Club is a national, non-profit, environmental organization with no commercial interest in obtaining the requested information. Instead, our organization intends to use the requested information to inform the public so that the public can provide meaningful participation in the FWS's decision making with regard to the status evaluation of the endangered Florida Key deer.

As explained more fully below, the above referenced FOIA request satisfies the fee waiver criteria listed in 43 C.F.R. § 2.19 of the Department of Interior's FOIA regulations, as well as the requirements of fee waiver under the FOIA statute – that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(iii), *see also* 43 C.F.R. § 2.19(b).

I.      **The requested disclosure is in the public interest and is likely to contribute significantly to public understanding of the FWS status review of the Florida Key deer**

To be eligible for a full fee waiver, FOIA requires that the requested information "contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 43 C.F.R. § 2.45(a)(1). DOI's regulations set forth four factors FOIA Officers will consider in determining whether a request meets this FOIA requirement. 43 C.F.R. § 2.48. Because this request meets each of these four factors, the Sierra Club has shown that the disclosure of the requested records is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government.

A.      **This request concerns the operations or activities of the federal government**

DOI regulations require requesters to demonstrate that disclosure of the requested records is "[i]n the public interest because it is likely to contribute significantly to public understanding of government operations or activities." 43 C.F.R. § 2.45(a)(1). To evaluate this standard, the FOIA officer will consider, inter alia, a requester's explanation of "[h]ow the records concern the

4

operations or activities of the Federal government." *Id.* § 2.48(a)(1).

The requested documents concern the operations or activities of the Federal government because they are generated in the course of the Fish and Wildlife Service, a federal agency, complying with its obligations under the Endangered Species Act (ESA), a federal law, to evaluate the status of an ESA listed species, the Florida Key deer. That evaluation must be in accordance with factors set forth in the ESA. Thus, because the sought records pertain to a federal agency's undertaking of duties required by the ESA, and constrained by ESA requirements, this request concerns the operations of the federal government.

**B.    Disclosure is likely to contribute to public understanding of the operations and activities of the Fish and Wildlife Service**

To evaluate the standard at 43 C.F.R 2.45(a)(1), the FOIA officer will also consider a requester's explanation of "[h]ow disclosure is likely to contribute to public understanding of those operations or activities, including: (i) How the contents of the records are meaningfully informative; [and] (ii) The logical connection between the content of the records and the operations or activities." *Id.* § 2.48(a)(2)(i)–(ii).

There is no publicly available information about the impetus or scientific basis for FWS's status review of the Florida Key deer. The status review was not noticed in the Federal Register and no petition for a status review is available on the FWS's website. Although it has been more than five years since the last status review for the species, FWS never provided notice to the public that it was undertaking the next five-year review for the species. Since FWS regulations require FWS to provide notice when it is undertaking a five-year review, it appears that this review has been motivated by either a petition or "other data available to the Service." 50 C.F.R. § 424.21. Understanding why FWS has decided to undertake a review of the Florida Key deer at this time, despite a recent outbreak of disease among the species and a devastating hurricane, both of which reduced the species' population, will provide "meaningfully informative" information about the "operations or activities" of FWS by providing insight into FWS's decision-making process. 43 C.F.R. § 2.48(a)(2).

Additionally, the ESA imposes an obligation on the agency to utilize the best available scientific information in its decisions as to the listing status of species. The requested documents will allow the public to ascertain how the agency is considering the available scientific information in the course of reviewing the status of the Florida Key deer, and what factors other than the best available scientific information may be shaping the species status review. The requested documents will therefore help Sierra Club and the public evaluate whether any potential delisting or down-listing recommendation resulting from the ongoing status review of the Florida Key deer comports with the requirements of the ESA.

This information is highly relevant to the Sierra Club because we and our members are deeply concerned about preventing the extinction of the Florida Key deer, and the continued necessity of ESA protections to ensure the recovery of the species. The Sierra Club and its members have long-standing experience and expertise in the subject area of this FOIA request, specifically the need for continued ESA protections for endangered species, including those in

5

Florida, to ensure the recovery of the species. For example, Sierra Club has engaged in efforts to ensure that sufficient protections for the Florida black bear and Florida panther will be maintained through the ESA. Those efforts included litigation regarding petitions for listing the Florida black bear as an endangered species, which required a high level of engagement with the science related to Florida black bear persistence in the face of threats such as habitat loss, as well as litigation regarding critical habitat for the Florida panther.

The Sierra Club also has the ability and intention to disseminate the information it receives through FOIA. The information is disseminated through a variety of ways, including but not limited to, analysis and distribution to the media, distribution through publication and mailing, emailing and list serve distribution to our members, and posting on the Club's website. Each month, the Sierra Club website receives approximately 850,000 visits. Sierra Magazine, which is published bimonthly by the Sierra Club, reaches more than a million people across North America. Sierra Club Insider, our e-newsletter, is sent to over a million people twice a month. In addition, Sierra Club disseminates information obtained through FOIA through comments to administrative agencies, and when necessary, through the judicial system. The Sierra Club has already published, posted, and disseminated information on the need for protections for endangered species in Florida,[5] and will continue to do so. The Sierra Club intends to use the information obtained through this FOIA both to provide more informed public comments to FWS regarding potential delisting or down-listing proposals regarding this species, and to communicate to the public directly about the species status review.

Thus, Sierra Club unquestionably has the "specialized knowledge" to address the issue of the ESA status of Florida Key deer, the protections needed to ensure the species' recovery, the science underlying that determination, and the legally relevant factors under the ESA; the "ability and intention" to disseminate the information requested; and the capacity to do so in a manner that contributes to the understanding of the "public-at-large."

**C.      Disclosure is likely to significantly contribute to the understanding of a reasonably broad audience of persons interested in the subject.**

To evaluate the standard at 43 C.F.R § 2.45(a)(1), the FOIA officer will also consider a requester's explanation of "[h]ow disclosure is likely to significantly contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to [the requester's] individual understanding." *Id.* at 2.48(a)(3). The FOIA officer will consider whether the information requested is new, *id.* § 2.48(a)(3)(i), or already publicly available, *id.* § 2.48(a)(3)(iv), and whether disclosure will increase the level of public understanding that existed prior to disclosure, § *id.* § 2.48(a)(iii).

The requested records will enable Sierra Club to provide information to the public at large about the basis for the FWS's status review of the Florida Key deer, including the impetus behind the current status review. Although the Florida Key deer is overdue for a five year status review, no notice was filed in the Federal Register of this review and no petitions for status review are recorded on the FWS's Florida Key deer webpage. The protection of Florida Key deer

---

[5] *See, e.g.,* Meredith Brown, "Will the Endangered Florida Panther Be Delisted?", Sierra Magazine, October 17, 2017, *available at* https://www.sierraclub.org/sierra/will-endangered-florida-panther-be-delisted.

and the integrity and rationale of the decision-making process of FWS regarding endangered species are issues of interest to thousands of Americans. The requested documents, among other things, will allow the public to evaluate why FWS has decided to review the status of the Florida Key deer at this time, as well as better understand the factors being considered by FWS and whether they comport with the best available science requirements of the ESA, or instead with political or economic considerations.

At present, the public has no access to information showing why FWS has decided to undertake a status review of the Florida Key deer at this time. Because FWS has not made available the underlying documents requested here, which will reveal why FWS is evaluating the Florida Key deer and the scientific information upon which it is relying, Sierra Club's dissemination of this information through social media and other public fora will provide new insight to a broad audience of interested persons as to the basis and impetus for the FWS's assessment. *See id.* at § 2.48(a)(3).

**D.    The public's understanding of the subject in question will be enhanced to a significant extent by the disclosure.**

DOI regulations require consideration of whether the public's understanding of the subject will be enhanced to a *significant extent* by disclosure. 43 C.F.R. § 2.48(a)(4). FOIA's legislative history makes clear that the 'significance' test is met where, as here, the information requested will support "public oversight of agency operations":

> A requester is likely to contribute significantly to the public understanding if the information disclosed is new; supports public oversight of agency operations; or otherwise confirms or clarifies data on past or present operations of the government.

132 Cong. Rec. H9464 (Reps. English and Kindness); *see also McClellan Ecological Seepage Situation*, 835 F.2d at 1284–86.

The responsive records Sierra Club has requested, and will disseminate to members, supporters, partner organizations, and the interested public, are essential in Sierra Club's efforts to ensure that the FWS complies with the ESA to protect wildlife imperiled by climate change and other threats from habitat-destroying activities such as logging and real estate development.

In providing currently unavailable information about why FWS has decided to undertake a status review of the Florida Key deer and how FWS is reviewing scientific data in making its status recommendation, the requested records will reveal whether FWS has complied with or violated the requirements of the ESA in the course of the status review. The information to be disclosed is "new" because currently the public has no access to information regarding the impetus for the status review; no petition for status review seems to have been filed and FWS did not publish notice in the federal register of the status review. Disclosures about why FWS is undertaking a status review of the Florida Key deer supports public oversight of agency operations by allowing the public to understand the decision-making process of FWS and the factors driving its decisions to undertake status reviews of endangered species.

Sierra Club plans to use the requested records to educate its members and the public at large about why FWS has decided to review the status of the Florida Key deer, including the role of politics in this decision, and whether the review is relying on the best available scientific information and other legally relevant factors. This information will improve the ability of the public to oversee and interact with FWS regarding the listing status of the species. The requested records will improve the ability of the public to provide information to the FWS that may be relevant to the status review, and to advocate for continued ESA protections for the Florida Key deer. This information will help the public to ensure that agency decision-making is not unduly influenced by politics, as opposed to the best available science.

Therefore, disclosure of such records, and the analysis and dissemination of the information contained therein, will improve the public's ability to evaluate the FWS's compliance with its ESA obligations regarding Florida Key deer, and thus will enhance to a significant extent the public's understanding of the subject of this FOIA request. *See* 43 C.F.R. § 2.48(a)(4).

## II.    Obtaining the information is of no commercial interest to the Sierra Club

The Sierra Club has no commercial interest in the requested records. Nor does the Club have any intention of using these records in any manner that "furthers a commercial, trade, or profit interest" as those terms are commonly understood. Sierra Club is a tax-exempt organization under section 501(c)(3) and 501(c)(4) of the Internal Revenue Code. The requested records will be used for the furtherance of the Club's educational mission to inform the public on matters of vital importance to the environment, wildlife, and natural resources.

If the requester does have a commercial interest, the fee waiver must not be granted unless the public interest in disclosure outweighs the requester's commercial interest. As noted above, the Sierra Club has no commercial interest in the requested records. Therefore, this requirement is not applicable. If any commercial interest was present, however, it would be outweighed by the public interest in disclosure of the information sought.

For the aforementioned reasons, the Sierra Club qualifies for a fee waiver under the test set out under 43 C.F.R. § 2.19(b). Pursuant to the same rule, FWS should waive processing and copying fees for this FOIA request.  If FWS does not agree to this fee waiver request, then I request that you contact me before incurring any copying or production fees above $200.

If you require clarification of any aspect of this FOIA records request and fee waiver request, please contact me at karimah.schoenhut@sierraclub.org or 202-548-4584.

Sincerely,

Karimah Schoenhut

Staff Attorney
Sierra Club
Environmental Law Program
50 F Street NW, 8th Floor
Washington, DC 20001
Phone: 202-548-4584
karimah.schoenhut@sierraclub.org

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **Sierra Club** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.  1:19-cv-02315-JEB** |
| **v.** | ) | |
| | ) | |
| **United States Fish and Wildlife Service,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# EXHIBIT B



**FOIA R4, FW4 <foiar4@fws.gov>**

## FOIA FWS-2018-00551 Acknowledgement

1 message

**FOIA R4, FW4** <foiar4@fws.gov>        Wed, Mar 21, 2018 at 7:01 AM
To: karimah.schoenhut@sierraclub.org

Dear Karimah Schoenhut,

This is in response to your Freedom of Information Act (FOIA) request, dated February 27, 2018, for records related to the ongoing species status review for the Florida Key deer (*Odocoileus virginianus clavium*), which has been assigned tracking number FWS-2018-00551. Our office received your request on February 27, 2018.

We have classified you as an "other-use" requester and considered your fee waiver request. Your fee waiver has been granted.

We use Multitrack Processing to process FOIA requests. The Simple track is for requests that can be processed in one to five workdays. The Normal track is for requests that can be processed in six to twenty workdays. The Complex track is for requests that can be processed in twenty-one to sixty workdays. The Exceptional/Voluminous track is for requests requiring more than sixty workdays for processing. The Expedited track is for requests that have been granted expedited processing. Within each track, requests are usually processed on a first-in, first-out basis.

Your request falls in the "exceptional/voluminous" processing track. Requests in this track will over sixty workdays to process. Please note the use of multi-track processing does not alter the statutory deadline for Fish and Wildlife Service to comply with your FOIA request.

You may narrow the scope of your request to obtain quicker processing in your currently-assigned track or move the request into a faster track (which may have the effect of reducing the cost of processing your request). If you have any questions about this, please contact us.

Please accept this as receipt of your request. Thanks and please feel free to contact my office if you have any questions or concerns.


V/R

Tiffany McClurkin

Government Information Specialist

Freedom of Information Act (FOIA) Coordinator

U.S. Fish & Wildlife Service

Southeast Region (Region 4)

1875 Century Blvd, Suite 214

Atlanta GA 30345

(E) foiar4@fws.gov

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Sierra Club | ) |
| | ) |
| Plaintiff, | ) |
| | )    Case No.  1:19-cv-02315-JEB |
| v. | ) |
| | ) |
| United States Fish and Wildlife Service, | ) |
| | ) |
| Defendants. | ) |

# EXHIBIT C

| | |
|---|---|
| **From:** | Tiffany McClurkin |
| **To:** | karimah.schoenhut@sierraclub.org |
| **Subject:** | FOIA FWS-2018-00551 1st Partial Response |
| **Date:** | Thursday, September 13, 2018 2:34:01 PM |
| **Attachments:** | Key deer follow up_Redacted.pdf |
| | I"ve been advised to remove the key deer from the 36 species notice.pdf |
| | Signed FWS 1st Partial Response 10 Sept 18.pdf |

Good Afternoon,

This is in response to your FOIA request FWS-2018-00551 received by our office on February 27, 2018. Attached is a partial response to your FOIA request FWS-2018-00551. The Field Offices are currently gathering additional records pertaining to your request. Thanks!

V/R

Tiffany McClurkin
Government Information Specialist
Freedom of Information Act (FOIA) Coordinator
U.S. Fish & Wildlife Service
Southeast Region (Region 4)
1875 Century Blvd, Suite 214
Atlanta GA 30345
(E) foiar4@fws.gov



# United States Department of the Interior

FISH AND WILDLIFE SERVICE
1875 Century Boulevard
Atlanta, Georgia 30345

In Reply Refer To:                    **SEP 1 0 2018**
FWS/R4/ES/2018-00551

Karimah Schoenhut
Sierra Club Environmental Law Program
50 F Street NW, 8th Floor
Washington, D.C. 20001

Dear Ms. Schoenhut:

This serves as the U.S. Fish and Wildlife Service's (Service) partial response to your Freedom of Information Act (FOIA), 5 U.S.C. § 552, request, dated February 27, 2018. In your request, you asked for all records generated since November 2016 discussing the ongoing species status review for the Florida Key deer *(Odocoileus virginianus clavium)*, including but not limited to:

- *Records pertaining to the impetus for the review, including but not limited to records of the reasons for, motivation behind, prompting of the review. Such records should include but are not limited to any communications within FWS and with outside agencies, parties or individuals;*
- *Records of scientific information presented to or generated by FWS;*
- *Records of scientific review from peer reviewers, State and Federal agency staff, and Department of Interior staff;*
- *Records of communications discussing the status of the species;*
- *Records of communications discussing regulatory mechanisms to address threats to the species; and*
- *Records of communications discussing conservation measures for the species*

The South Florida Ecological Services Program has searched its records and has located five (5) documents that are responsive to your request. After consulting with the Office of the Regional Solicitor, it has been determined that three (3) of the documents you are seeking are exempt from disclosure pursuant to Exemption 5, 5 U.S.C § 552(5), of the FOIA. The information withheld pursuant to Exemption 5 includes privileged information involving discussions on matters of policy between subordinates and superiors and were used to guide the Agency in the decision making process. We are releasing one (1) document in its entirety and have partially withheld one (1) document.

Exemption 5

Exemption 5 of the FOIA allows an agency to withhold "inter-agency and intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the Agency." 5 U.S.C. § 552(b)(5). Exemption 5 therefore incorporates the privileges that protect materials from discovery in litigation, including the deliberative process, attorney work-product, attorney-client, and commercial information privileges.

Ms. Schoenhut                                                                                    2

Deliberative Process Privilege

The deliberative process privilege protects the decision-making process of government agencies and encourages the frank exchange of ideas on legal or policy matters by ensuring agencies are not forced to operate in a fish bowl. A number of policy purposes have been attributed to the deliberative process privilege. Among the most important are to: (1) assure that subordinates will feel free to provide the decision maker with their uninhibited opinions and recommendations; (2) protect against premature disclosure of proposed policies; and (3) protect against confusing the issues and misleading the public.

The deliberative process privilege protects materials that are both pre-decisional and deliberative. The privilege covers records that reflect the "give-and-take of the consultative process" and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."

The materials that have been withheld under the deliberative process privilege of Exemption 5 are both pre-decisional and deliberative. They do not contain or represent formal or informal agency policies or decisions. They are the result of frank and open discussions among employees of the Department of the Interior. Their contents have been held confidential by all parties, and public dissemination of this information would have a chilling effect on the agency's deliberative processes.

The deliberative process privilege does not apply to records created 25 years or more before the date on which the records were requested.

We reasonably foresee that disclosure would harm an interest protected by one or more of the nine exemptions to the FOIA's general rule of disclosure.

In addition to me, the official responsible for this partial denial is:

    Brigette J. Beaton, Attorney-Advisor
    Office of the Regional Solicitor
    U.S. Department of the Interior
    75 Ted Turner Drive, S.W., Suite 304
    Atlanta, Georgia 30303

You may appeal this partial denial under 43 C.F.R. § 2.57 by writing to:

    Freedom of Information Act Appeals Officer
    U.S. Department of the Interior
    Office of the Solicitor
    1849 C Street, NW, Mail Stop 6556
    Washington, D.C. 20240
    Email: FOIA.Appeals@sol.doi.gov

Your appeal must be received no later than 90 workdays after the date of this letter. The appeal should be marked, both on the envelope and the face of the appeal letter, with the legend "FREEDOM OF INFORMATION APPEAL." Your appeal should be accompanied by a copy of your original request and this letter, along with any information you have which leads you to believe the records should be made available. Failure to include with your appeal all correspondence between you and the Service will result in the Department's rejection of your appeal, unless the FOIA Appeals Officer determines (in the FOIA Appeals Officer's sole discretion) that good cause exists to accept the defective appeal. Please include your name and daytime telephone number (or the name and

Ms. Schoenhut                                                                                    3

telephone number of an appropriate contact), email address and fax number (if available) in case the FOIA Appeals Officer needs additional information or clarification of your appeal.

Also as part of the 2007 OPEN Government Act FOIA amendments, the Office of Government Information Services (OGIS) was created to offer mediation services to resolve disputes between FOIA requesters and Federal agencies as a nonexclusive alternative to litigation. Using OGIS services does not affect your right to pursue litigation.

You may contact OGIS via regular mail at:

> Office of Government Information Services
> National Archives and Records Administration
> 8601 Adelphi Road - OGIS
> College Park, MD 20740-6001

You may also contact OGIS in the following ways:

| | |
|---|---|
| E-mail: | ogis@nara.gov |
| Web: | https://ogis.archives.gov |
| Phone: | (202) 741-5770 |
| Fax: | (202) 741-5769 |
| Toll-free: | 1-877-684-6448 |

You also may seek dispute resolution services from our FOIA Public Liaison, Carrie Hyde-Michaels, Chief Branch of FOIA, Records, and Privacy, at (703) 358-2291.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. § 552(c). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

If you have any questions, please contact Roxanna Hinzman, Project Leader, South Florida Ecological Services Office, at (772) 469-4309 or roxanna_hinzman@fws.gov. Thank you for contacting the U.S. Fish and Wildlife Service.

Sincerely yours,

for    Mike Oetker
Acting Regional Director

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **Sierra Club** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.  1:19-cv-02315-JEB** |
| **v.** | ) | |
| | ) | |
| **United States Fish and Wildlife Service,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# EXHIBIT D

Vaughn Index for FOIA FWS-2018-00551
Sierra Club v. FWS, et. al. Case No. 1:19-cv-02315-JEB

FOIA Exemptions and Justifications for Fish and Wildlife Service Withheld Records

This index identifies and describes records the Fish and Wildlife Service withheld from release under 5 U.S.C. Sections 552(b)(5) and (b)(6).

**Partial Withhold Documents**

| Doc # | FOIA Exemption | Document Title | # of Pages | Record Date | Document Description/Justification |
|---|---|---|---|---|---|
| 1 | (b)(5) - Deliberative Process Privilege | 2018 02 18 PPT Key deer presentation.pdf+B3:B19 | 47 | 2/18/2018 | This presentation summarizes the Key Deer SSA and ends with a recommendation. The recommendation has the potential to confuse the public since no final agency determination has been reached. As such, the recommendation does not represent the agency's decision, and may not reflect the final decision. |
| 2 | (b)(6) - PII | 20171117_COI_Diefenbach.pdf | 5 | 11/17/2017 | Conflict of Interest Disclosure for peer reviewer. Withheld personal phone number. Disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." |
| 3 | (b)(6) - PII | 20171120_COI_Stephen Ditchikoff.pdf | 5 | 11/20/2017 | Conflict of Interest Disclosure for peer reviewer. Withheld personal phone number. Disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." |
| 4 | (b)(6) - PII | 20171127_COI_Nils Peterson.pdf | 5 | 11/27/2017 | Conflict of Interest Disclosure for peer reviewer. Withheld personal phone number. Disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." |
| 5 | (b)(6) - PII | 20171212_COI_Collier.pdf | 5 | 12/12/2017 | Conflict of Interest Disclosure for peer reviewer. Withheld personal phone number. Disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." |
| 6 | (b)(6) - PII | 20171214 Key deer SSA COI hewitt.pdf | 5 | 12/14/2017 | Conflict of Interest Disclosure for peer reviewer. Withheld personal phone number. Disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." |
| 7 | (b)(5) - Deliberative Process Privilege | Key deer follow up1.pdf | 2 | 1/11/2018 | Comment relates to the inclusion/removal of Key deer from the notice. The recommendation has the potential to confuse the public since no final agency determination has been reached. As such, the recommendation does not represent the agency's decision, and may not reflect the final decision. |
| 8 | (b)(5) - Deliberative Process Privilege | R4_20180622 0706_Email_Fwd_Key deer briefing.pdf | 16 | 6/22/2018 | Internal correspondence sharing the briefing for the Regional Director on the recommendation for Key deer classification based on the Recommendation Team Meeting. Includes IM for the Secretary on proposed delisting. No decision has been made on the status of the Key deer. In fact a subsequent recommendation team meeting has occurred. Pre-mature release would cause confusion to the public and a chilling effect on the Agency's decision. |
| 9 | (b)(5) - Deliberative Process Privilege | 5_Revisions.pdf | 11 | 10/24/2019 | Correspondence relate to the development of the Key deer species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 10 | (b)(5) - Deliberative Process Privilege | 20180201 email update.pdf | 1 | 2/1/2018 | Files relate to the inclusion/removal of Key deer from the notice. The recommendation has the potential to confuse the public since no final agency determination has been reached. As such, the recommendation does not represent the agency's decision, and may not reflect the final decision. |
| 11 | (b)(5) - Deliberative Process Privilege | 8_Key Deer Biology Species Needs.pdf | 4 | 10/24/2019 | Correspondence relate to the development of the Key deer species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. |
| 12 | (b)(5) - Deliberative Process Privilege | 7_Key Deer SSA Current_Future Condition.pdf | 12 | 10/24/2019 | Correspondence relate to the development of the Key deer species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 13 | (b)(5) - Deliberative Process Privilege | 6_Key Deer SSA.pdf | 11 | 10/24/2019 | Correspondence relate to the development of the Key deer species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public. |
| 14 | (b)(5) - Deliberative Process Privilege | 4_key deer ssa ownership.pdf | 3 | 10/24/2019 | Correspondence relate to the development of the Key deer species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public. |

| | | | | | |
|---|---|---|---|---|---|
| 15 | (b)(5) - Deliberative Process Privilege | 2_Key Deer SS SLR discussion.pdf | 5 | 10/24/2019 | Internal Service correspondence related to interpretation and representation of sea level rise information for the Key deer Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 16 | (b)(5) - Deliberative Process Privilege | 1_Key Deer SSA Peer Review.pdf | 21 | 8/1/2018 | Correspondence includes Peer review comments on draft Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 17 | (b)(5) - Deliberative Process Privilege | Re Initiation of a 5-year review for Gulf Sturgeon.pdf | 1 | 1/16/2018 | Files relate to the inclusion/removal of Key deer from the notice. The recommendation has the potential to confuse the public since no final agency determination has been reached. As such, the recommendation does not represent the agency's decision, and may not reflect the final decision. |
| 18 | (b)(5) - Deliberative Process Privilege | Re_ Key Deer SSA Current_Future Condition.pdf | 2 | 10/17/2017 | Contains comments of the SSA and future condition. Pre-mature release would be confusing to the public and may not reflect the final agency decision. |
| 19 | (b)(5) - Deliberative Process Privilege | Rules_Findings workplan-working draft-R48172017_revised.pdf | 3 | no date | Files include internal discussion on the classification recommendations for multiple species that were not requested in the FOIA and are pre-decisional and may not reflect the final decision of the agency. |
| 20 | Exemption 5 - DPP; Exemption 6 | Watts email chain_Another request.pdf | 11 | 8/17/2017 | Email contains discussions of the SSA, pre-decisional document; also included a personal home address. Withheld personal home address. Disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 21 | (b)(5) - Commercial Information Privilege | Watts email chain_Key Deer SSA Briefing.pdf | 6 | 1/8/2018 | Email contains commercial privilege information for a conference call. The conference telephone number and passcode in this case pertains to the Service's ongoing operations in the area that is the subject of the request. The information withheld under this privilege reflects information concerning the operations of the government which could be harmed if disclosed. Therefore, we conclude that disclosure of conference telephone number and passcode could place the government at a competitive disadvantage. |
| 22 | (b)(5) - Deliberative Process Privilege | Watts email chain_Waterhole salinity.pdf | 14 | 11/13/2017 | Information is releasable but discussion that refences how the information will be used in the SSA is pre-decisional. By withholding the discussion related to the Species Status Assessment, the data is releasable. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |

| 23 | (b)(5) - Deliberative Process Privilege | Watts_Email chain_Key deer Biology and Species Needs.pdf | 4 | 8/17/2017 | Correspondence discusses the SSA, a pre-decisional document. Specifically, the key deer biology and species needs. Pre-mature release of this information would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| --- | --- | --- | --- | --- | --- |
| 24 | (b)(5) - Deliberative Process Privilege | Watts_email chain_Key Deer SSA Current Future Condition.pdf | 10 | 10/4/2017 | Correspondence discusses the Key Deer current/future condition and the SSA, a pre-decisional document. Pre-mature release would be confusing to the public and may not reflect the final agency decision. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 25 | (b)(5) - Deliberative Process Privilege | Att_Fwd_4d Powerpoint Slide_KeyDeerRisk_Risk.pdf | 14 | 1/10/2018 | Information withheld is specific to Key deer and the classification decision. Release of this information is pre-decisional and may not reflect the final agency decision. Pre-mature release would cause confusion to the public and a chilling effect on the Agency's decision. |
| 26 | (b)(5) - Deliberative Process Privilege | Att_Newer version of_Classification update topics for Feb 14.pdf | 1 | 2/14/2018 | Document discusses proposed actions of species. Pre-mature release of this information would be confusing to the public and cause a chilling effect on the Agency's decision. |
| 27 | (b)(5) - Deliberative Process Privilege | Comments on the key deer SSA.pdf | 1 | 1/2/2018 | Correspondence includes comments on the key deer SSA. Until the SSA is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 28 | (b)(5) - Deliberative Process Privilege | Fwd_Key deer foreseeable future.pdf | 2 | 2/13/2018 | Correspondence includes discussion of the foreseeable future of the key deer. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 29 | (b)(5) - Deliberative Process Privilege | KeyDeerRisk_Risk(1).pdf | 14 | 1/10/2018 | Information withheld is specific to Key deer and the classification decision. Release of this information is pre-decisional and may not reflect the final agency decision. Pre-mature release would cause confusion to the public and a chilling effect on the Agency's decision. |
| 30 | (b)(5) - Deliberative Process Privilege | KeyDeerRisk_Risk.pdf | 13 | 1/10/2018 | Information withheld is specific to Key deer and the classification decision. Release of this information is pre-decisional and may not reflect the final agency decision. Pre-mature release would cause confusion to the public and a chilling effect on the Agency's decision. |

| | | | | | |
|---|---|---|---|---|---|
| 31 | (b)(5) - Commercial Information Privilege; Deliberative Process Privilege | Re_ Invitation_ Meet for lunch to discuss clima...(3).pdf | 6 | 1/28/2018 | Correspondence includes discussion of information that will be used in the Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public; Document also includes commercial privilege information for a conference call. The conference telephone number and passcode in this case pertains to the Service's ongoing operations in the area that is the subject of the request. The information withheld under this privilege reflects information concerning the operations of the government which could be harmed if disclosed.  Therefore, we conclude that disclosure of conference telephone number and passcode could place the government at a competitive disadvantage. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents.  It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision.  The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register.  The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 32 | (b)(5) - Deliberative Process Privilege | Re_ Key Deer SS SLR discussion.pdf | 2 | 1/10/2018 | Correspondence includes discussion of information that will be used in the Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public and cause a chilling effect on the Agency's decision. |
| 33 | (b)(5) - Deliberative Process Privilege | Re_ key deer SSA(1).pdf | 2 | 1/20/2017 | Correspondence includes discussion of information that will be used in the Species Status Assessment and classification decision  Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. Pre-mature release would cause confusion to the public and a chilling effect on the Agency's decision. |
| 34 | (b)(5) - Deliberative Process Privilege | Re_ Sea level rise question.pdf | 2 | 1/27/2017 | Correspondence includes discussion of information that will be used in the Species Status Assessment and classification decision  Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public and cause a chilling effect on the Agency's decision. |
| 35 | (b)(5) - Commercial Information Privilege; Deliberative Process Privilege | Re_ Updated invitation_ pre-Laura mtg. @ Wed Ja….pdf | 2 | 1/24/2018 | Attachment - Correspondence includes discussion of information that will be used in the Species Status Assessment and classification decision.  Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public; Email also includes commercial privilege information for a conference call. The conference telephone number and passcode in this case pertains to the Service's ongoing operations in the area that is the subject of the request.  The information withheld under this privilege reflects information concerning the operations of the government which could be harmed if disclosed.  Therefore, we conclude that disclosure of conference telephone number and passcode could place the government at a competitive disadvantage. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents.  It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision.  The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register.  The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 36 | (b)(5) - Deliberative Process Privilege | SSA_rule status (FY18_19).pdf | 1 | 1/6/2018 | Correspondence include information on workplans and classification actions.  This information was draft and may not represent the final agency decision or classification decision.  This document includes information on species that is not related to the FOIA request. |
| 37 | (b)(5) - Deliberative Process Privilege | Rules_Findings workplan-working draft-R48172017_revised.pdf | 4 | 8/17/2017 | Files include internal discussion on the classification recommendations for multiple species that were not requested in the FOIA and are pre-decisional and may not reflect the final decision of the agency. |
| 38 | (b)(6) - PII | KeyDeer_SSA_Schedule (4).pdf | 3 | no date | Interested party letter distribution with contact information and SSA R4 Project Plan Timeline. Withheld personal contact information. Disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." |
| 39 | (b)(6) - PII | 20171120113006662.pdf | 5 | 11/20/2017 | Conflict of Interest Disclosure for peer reviewer. Withheld personal phone number. Disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." |

| Doc # | Exemption | Document Title | # of Pages | Record Date | Document Description |
|---|---|---|---|---|---|
| 40 | (b)(5) - Deliberative Process Privilege | R4_20180615 1203_Email_Key deer briefing.pdf | 15 | 6/15/2018 | Internal correspondence sharing the briefing for the Regional Director on the recommendation for Key deer classification based on the Recommendation Team Meeting. Includes IM for the Secretary on proposed delisting. No decision has been made on the status of the Key deer. In fact a subsequent recommendation team meeting has occurred. Pre-mature release would cause confusion to the public and a chilling effect on the Agency's decision. |
| 41 | (b)(5) - Deliberative Process Privilege | R4_20180615 1603_Email_Re_Key Deer briefing.pdf | 6 | 6/15/2018 | Internal correspondence sharing the executive summary for the Key deer species status assessment. This document has been subsequently revised and a final decision is pending. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| SUM | | | 302 | | |

**Withhold in Full Documents**

| Doc # | Exemption | Document Title | # of Pages | Record Date | Document Description |
|---|---|---|---|---|---|
| 1 | (b)(5) - Deliberative Process Privilege | 1.1 SLR and Waterhole figures.pdf | 5 | | Figures from the Key deer Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 2 | (b)(5) - Deliberative Process Privilege | 1.1 Species needs and current condition_09152017.pdf | 35 | 9/15/2017 | Text from the Key deer Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 3 | (b)(5) - Deliberative Process Privilege | 2.1 Species needs and current condition_09152017.pdf | 35 | 9/15/2017 | Appears to be duplicate of record 4. Text from the Key deer Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 4 | (b)(5) - Deliberative Process Privilege | 35 species FR notice to initiate 5-year reviews.pdf | 1 | 3/20/2018 | Files relate to the inclusion/removal of Key deer from the notice. The recommendation has the potential to confuse the public since no final agency determination has been reached. As such, the recommendation does not represent the agency's decision, and may not reflect the final decision. Pre-mature release would cause confusion to the public and a chilling effect on the Agency's decision. |
| 5 | (b)(5) - Deliberative Process Privilege | 20180111 0755-1_Florida Key Deer SSA_January 8, 2018.pdf | 113 | 1/8/2018 | Correspondence discussing the Key deer Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public. Pre-mature release would cause confusion to the public and a chilling effect on the Agency's decision. |

| | | | | | |
|---|---|---|---|---|---|
| 6 | (b)(5) - Deliberative Process Privilege | KD SSA Mtg Jarnold.pdf | 2 | | Responses to the solicitation questions asked during the first recommendation meeting, and rationale for Jack Arnold's initial recommendation that the key deer does not meet the definition of an endangered or threatened species (it should be delisted).  Decision was not finalized -never published a rule proposing to delist.  In fact, we pulled the draft rule, and the SSA back, revised the SSA based on new science and held a second recommendation team meeting which resulted in us changing our decision/recommendation.  And we are still working on the revised proposal - that's not yet been finalized/approved yet.  To release this discussion at this point is pre-decisional and would confuse the public. |
| 7 | (b)(5) - Deliberative Process Privilege | Re_Key deer Talking points.pdf | 1 | | As part of this document, there is a paragraph discussing our recommendation (determination) that the key deer does not meet the definition of an endangered or threatened species (it should be delisted)....  We never finalized that decision - never published a rule proposing to delist.  In fact, we pulled the draft rule, and the SSA back, revised the SSA based on new science and held a second recommendation team meeting which resulted in us changing our decision/recommendation.  And we are still working on the revised proposal - that's not yet been finalized/approved yet.  To release this discussion at this point is pre-decisional and would confuse the public. |
| 8 | (b)(5) - Deliberative Process Privilege | 1.1 08032017_Key Deer_Biology and Species Needs.docx | 20 | 8/3/2017 | Text from the Key deer Species Status Assessment.  Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents.  It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision.  The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register.  The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 9 | (b)(5) - Deliberative Process Privilege | 1.1 10042017_Current and Future Conditions (1).docx | 46 | 10/4/2017 | Text from the Key deer Species Status Assessment.  Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents.  It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision.  The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register.  The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 10 | (b)(5) - Deliberative Process Privilege | 1.1 Elicitation Questions for Key Deer Experts.docx | 1 | no date | Correspondence includes information related to a classification decision.  Until a final decision is made, this information is pre-decisional. Pre-mature release would cause confusion to the public and a chilling effect on the Agency's decision. |
| 11 | (b)(5) - Deliberative Process Privilege | 1.1 Florida Key Deer SSA_Oct, 31, 2017_v.2.docx | 100 | 10/31/2017 | Draft of the Species Status Assessment.  Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents.  It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision.  The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register.  The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 12 | (b)(5) - Deliberative Process Privilege | 2.1 08032017_Key Deer_Biology and Species Needs_reviewKW08172017.docx | 20 | 8/3/2017 | Text from the Key deer Species Status Assessment.  Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents.  It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision.  The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register.  The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 13 | (b)(5) - Deliberative Process Privilege | 2.1 Elicitation Questions for Key Deer Experts_Kwcomments.docx | 2 | no date | Correspondence includes information related to a classification decision.  Until a final decision is made, this information is predecisional. Pre-mature release would cause confusion to the public and a chilling effect on the Agency's decision. |

| | | | | | |
|---|---|---|---|---|---|
| 14 | (b)(5) - Deliberative Process Privilege | 2.1 Florida Key Deer SSA_Oct, 31, 2017_v.2.docx | 100 | 10/31/2017 | Draft of the Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 15 | (b)(5) - Deliberative Process Privilege | 2.1 image.png | 1 | no date | Image of information used in association with the Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 16 | (b)(5) - Deliberative Process Privilege | 3.1 10042017_Current and Future Conditions (1).docx | 46 | 10/4/2017 | Text from the Key deer Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 17 | (b)(5) - Deliberative Process Privilege | 4.1 10042017_Current and Future Conditions_Kwedits.docx | 46 | 10/4/2017 | Text from the Key deer Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 18 | (b)(5) - Deliberative Process Privilege | 4.2 Florida Key Deer SSA_Oct, 31, 2017_Kwedits.docx | 100 | 10/31/2017 | Correspondence includes comments on draft Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The species status assessment is a draft document until the decision has been made and released to the public as supporting documentation for the agency decision. Additionally it is not considered "final" until the associated classification decision (draft or final) is published in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 19 | (b)(5) - Deliberative Process Privilege | 6.1 10042017_Current and Future Conditions (1).docx | 46 | 10/4/2017 | Text from the Key deer Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |

| | | | | | |
|---|---|---|---|---|---|
| 20 | (b)(5) - Deliberative Process Privilege | 10042017_Current and Future Conditions_MD.docx | 46 | 10/4/2017 | Text from the Key deer Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 21 | (b)(5) - Deliberative Process Privilege | 10042017_Current and Future Conditions_MD_RLH.docx | 46 | 10/4/2017 | Text from the Key deer Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 22 | (b)(5) - Deliberative Process Privilege | Florida Key Deer SSA Roel Lopez Comments 20171106.docx | 4 | 11/6/2017 | Correspondence includes comments on draft Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 23 | (b)(5) - Deliberative Process Privilege | Florida Key Deer SSA_Oct 31 2017_v.2_Silvy.docx | 101 | 10/31/2017 | Correspondence includes comments on draft Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 24 | (b)(5) - Deliberative Process Privilege | Florida Key Deer SSA_Oct, 31, 2017_v.2.docx | 100 | 10/31/2017 | Draft of the Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 25 | (b)(5) - Deliberative Process Privilege | Florida Key Deer SSA_Oct, 31, 2017_v.2_RLH.docx | 100 | 10/31/2017 | Correspondence includes comments on draft Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |

| # | Exemption | Document | Pages | Date | Description |
|---|---|---|---|---|---|
| 26 | (b)(5) - Deliberative Process Privilege | INFO ONLY, NOT FOR EXTERNAL DISSEMINATION_ Key Deer Species Status Assessment (SSA) Update.pdf | 1 | 7/11/2018 | Correspondence includes information on classification recommendation. Until a final classification decision is made this information is pre-decisional and pre-mature release of this information would cause confusion to the public and a chilling effect on the Agency's decision. |
| 27 | (b)(5) - Deliberative Process Privilege | Key Deer SSA_20171221.docx | 107 | 12/21/2017 | Draft of the Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 28 | (b)(5) - Deliberative Process Privilege | KeyDeerForeseeableFuture.docx | 2 | no date | Text from the Key deer Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 29 | (b)(5) - Deliberative Process Privilege | Watts_email chain_ Waterholes and Sex Ratios.pdf | 3 | 10/22/2017 | Correspondence includes discussion of information for incorporation into the Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 30 | (b)(5) - Deliberative Process Privilege | Watts_email chain_one more request.pdf | 3 | 10/15/2017 | Correspondence includes discussion of information for incorporation into the Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 31 | (b)(5) - Deliberative Process Privilege | 20171117_Florida Key Deer SSA_Peer Review dra.docx | 107 | 11/17/2017 | Correspondence includes comments on draft Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 32 | (b)(5) - Deliberative Process Privilege | Classification update topics for February 14,.docx | 1 | 2/14/2018 | Correspondence include information that is pre-decisional. Pre-mature release would cause confusion to the public and a chilling effect on the Agency's decision. |

| # | Exemption | Document | Pages | Date | Description |
|---|---|---|---|---|---|
| 33 | (b)(5) - Deliberative Process Privilege | Florida Key Deer SSA_January 8, 2018.docx | 113 | 1/8/2018 | Draft of the Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 34 | (b)(5) - Deliberative Process Privilege | Key Deer Delisting_ Next Steps.pdf | 1 | 1/12/2018 | Correspondence includes information on classification recommendation. Until a final classification decision is made this information is predecisional. Pre-mature release would cause confusion to the public and a chilling effect on the Agency's decision. |
| 35 | (b)(5) - Deliberative Process Privilege | Key Deer SSA_20171221.docx | 107 | 12/21/2017 | Correspondence include draft Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 36 | (b)(5) - Deliberative Process Privilege | key deer.docx | 2 | no date | Document discussing key deer foreseeable future with comments. Pre-mature release would cause confusion to the public and a chilling effect on the Agency's decision. |
| 37 | (b)(5) - Deliberative Process Privilege | KeyDeer_Scoresheet.xlsx | 1 | no date | Correspondence includes discussion and information used in the recommendation team meeting for a classification decision. Until this decision is made this is pre-decisional and pre-mature release of this information would cause confusion to the public and a chilling effect on the Agency's decision. |
| 38 | (b)(5) - Deliberative Process Privilege | SSA Comments20180124.docx | 3 | 1/24/2018 | Correspondence includes comments on draft Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 39 | (b)(5) - Deliberative Process Privilege | 20171117 Florida Key Deer SSA Peer Review draft SLT comments.docx | 107 | 11/17/2017 | Correspondence includes comments on draft Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 40 | (b)(5) - Deliberative Process Privilege | 20171117 Florida Key Deer SSA Peer Review draft.docx | 107 | 11/17/2017 | Draft of the Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |

| | | | | | |
|---|---|---|---|---|---|
| 41 | (b)(5) - Deliberative Process Privilege | 08032017_Key Deer_Biology and Species Needs_md.docx | 20 | 8/3/2017 | Sections of the draft Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public. The species status assessment is a draft document until the decision has been made and released to the public as supporting documentation for the agency decision. Additionally it is not considered "final" until the associated classification decision (draft or final) is published in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 42 | (b)(5) - Deliberative Process Privilege | /4. Key deer ssa ownership/1.2 Figure 16_Ownership+_20171116.jpg | 1 | 11/16/2017 | Sections of the draft Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 43 | (b)(5) - Deliberative Process Privilege | /5. Revisions/3.2 Figure4_REVISED.jpg | 1 | no date | Sections of the draft Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 44 | (b)(5) - Deliberative Process Privilege | /5. Revisions/3.3 Figure 16_REVISED.jpg | 1 | no date | Sections of the draft Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 45 | (b)(5) - Deliberative Process Privilege | /5. Revisions/5.2 Figure 16_Ownership_20171116test.jpg | 1 | 11/16/2017 | Sections of the draft Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Pre-mature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 46 | (b)(5) - Deliberative Process Privilege | KeyDeerWorksheet.docx | 4 | no date | Responses to questions for use in the recommendation team meeting to frame classification decision. Until this decision is made, this is pre-decisional and pre-mature release of this information would cause confusion to the public and a chilling effect on the Agency's decision. |
| 47 | (b)(5) - Deliberative Process Privilege | 20171117_Florida Key Deer SSA_Peer Review draft.docx | 107 | 11/17/2017 | Correspondence include draft Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public. The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents. It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision. The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register. The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |

| | | | | | |
|---|---|---|---|---|---|
| 48 | (b)(5) - Deliberative Process Privilege | 20171117_Florida Key Deer SSA_Peer Review draft - SSD edits.docx | 107 | 11/17/2017 | Correspondence include draft Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public.  The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents.  It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision.  The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register.  The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 49 | (b)(5) - Deliberative Process Privilege | Copy of Key deer SSA Peer Review Comment Matrix Peterson.xlsx | 1 | no date | Contains reviewers comments on draft Species Status Assessment.  Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public.  The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents.  It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision.  The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register.  The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| 50 | (b)(5) - Attorney Client Privilege | 5YR_37_SE_SPP_Signed.pdf | 2 | 12/11/2017 | SOL surname transmission with comments |
| 51 | (b)(5) - Attorney Client Privilege | 20171206 5 yr review draft FR Notice of Init for SE spp_SOL20171211 (1).doc | 10 | 12/6/2017 | Draft Federal Register Notice for Southeastern Species with SOL Comments |
| 52 | (b)(5) - Deliberative Process Privilege | 20171117_Florida Key Deer SSA_Peer Review draft - Hewitt.docx | 107 | 11/17/2017 | Correspondence include draft Species Status Assessment. Until this document is determined to be releasable these comments are referring to a pre-decisional document. Premature release would be confusing to the public.  The Species Status Assessment is an internal deliberative work product that is developed to inform specific petition findings, listing determinations, or other documents.  It is considered draft until the decision it informs has been made and it is released to the public as supporting documentation for the agency decision.  The document is considered "final" upon the publication of the associated decision (draft or final) in the federal register.  The foreseeable harm of releasing such a deliberative document before the decision official has had the opportunity to review, discuss, question, or consider the information in the context of the decision would cause a chilling effect to the agency. |
| SUM | | | 2144 | | |